UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Alexander Guerrero, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>PIM Brands, Inc.,<br><br>      Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. PIM Brands, Inc. ("Defendant") manufactures, labels, markets, and sells Sour Jacks Sour Wedges under the Sour Jacks brand ("Product").



## I. CONSUMERS VALUE BIGGER PACKAGING

2. The average consumer spends 13 seconds making an in-store purchasing decision.

3. Faced with a large and a smaller box, consumers choose the larger box, thinking it is a better value.

4. Studies show approximately 80 percent of consumers do not look at label information, especially the net weight and servings.

5. Further, courts across the country recognize that consumers purchasing everyday items such as low-cost groceries and snacks are likely to exhibit a low degree of care.

6. Though a reasonable consumer does not expect a package to burst at the seams, they expect the amount of product bears a reasonable relationship to the size of the package.

II. **EMPTY SPACE IN DEFENDANT'S SOUR CANDY BOXES**

7. The Product is sold in a box 4 inches wide and 6 inches high.

8. Despite its size, the package is only 38% full of Sour Jacks, with 62% empty space.




9. Consumers are misled into believing that they are purchasing substantially more candy wedges than they receive.

10. A representative comparison of the competitive candy boxes which are/were marketed alongside the Product at the time of Plaintiff's purchase were/are:

| Name | % of candy | % slack-fill | box size |
|---|---|---|---|
| Jujyfruits | 87% | 13% | 3.25" x 5.75" |
| Fruit Chews | 68% | 32% | 3.25" x 5.5" |
| Dots | 74% | 26% | 3.5" x 6" |
| Sour Patch Kids | 54% | 46% | 3.75" x 6" |
| Sour Jacks | 38% | 62% | 4" x 6" |

### III. NO LEGITIMATE REASONS FOR EMPTY SPACE

11. Federal and identical state regulations recognize that deceptive packaging can be used to the detriment of consumers, but also that there are valid reasons ("safe harbors") for why foods may have what appears to be excess space, or slack-fill. *See* 21 C.F.R. § 100.100 ("Misleading containers.").

12. For slack-fill to be deemed nonfunctional, the empty space cannot be due to one of the six recognized safe harbors. 21 C.F.R. § 100.100(a)(1)-(6) ("Safe Harbors").

13. The slack-fill in the Product is nonfunctional because it is not covered under any of these safe harbors.

14. First, the candy wedges do not require more than 60% empty space to protect them from damage, as they are not at risk of breakage. *See* 21 C.F.R. § 100.100(a)(1) ("Protection of the contents of the package").

15. This is in contrast to potato chips, which contain a significant amount of air to prevent the contents from being crushed and the chips destroyed.

16. In fact, candy wedges would be better protected in a smaller box, because the excess air and space in the box allows other items to press against this portion of the box, possibly causing it to "pop" or be damaged.

17. Second, there are no requirements of the machines used to enclose the candy wedges

3

that would leave over 60% of empty space. *See* 21 C.F.R. § 100.100(a)(2) ("The requirements of the machines used for enclosing the contents in such package").

18. These machines can use less cardboard and contain the same amount of candy wedges.

19. Third, no issue exists with respect to the candy wedges settling during shipping and handling. *See* 21 C.F.R. § 100.100(a)(3) ("Unavoidable product settling during shipping and handling").

20. Candy wedges are dense, and no settling occurs after being filled in the box.

21. Fourth, the packaging is not required to perform a specific function, i.e., play a role in the consumption of the candy wedges. *See* 21 C.F.R. § 100.100(a)(4).

22. Once a customer pours out or grabs the candy wedges to eat, the box's role is finished.

23. Fifth, the box is not a "reusable container," nor part of the presentation of the candy wedges and does not have value in proportion to the value of the candy wedges, independent of its function to hold the candy wedges. *See* 21 C.F.R. § 100.100(a)(5).

24. This is confirmed because the box is discarded after, and not intended to be filled with other items.

25. The box does not contain any re-sealable top or special coatings which would facilitate its further use.

26. Sixth, no inability exists to increase the amount of candy wedges or to reduce the size of the box to a minimum size necessary to accommodate required food labeling or perform another purpose. *See* 21 C.F.R. § 100.100(a)(6).

27. There is no need for a tamper resistant device, and the Product is sold without one.

28. Defendant can reduce deception by adding a prominent fill line or transparent window to the front label.

Parties, Jurisdiction & Venue

29. Plaintiff Alexander Guerrero is a citizen of Saint Louis, Saint Louis County, Missouri.

30. Defendant PIM Brands, Inc., formally known as Promotion In Motion, Inc., is a Delaware corporation with a principal place of business in Park Ridge, Bergen County, New Jersey.

31. The members of the class or classes Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in hundreds of stores and online, across the States covered by Plaintiff's proposed classes.

32. The Product is available to consumers from grocery stores, big box stores, convenience stores, discount stores, and/or online.

33. Venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

34. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $1.00 per 3.5 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the excessively large and underfilled box.

35. Plaintiff purchased the Product at locations including Dollar Tree near where he lives, between June 2021 and the present, among other times.

36. Plaintiff relied on the words, terms coloring, descriptions, layout, placement,

packaging, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

37.     Plaintiff viewed the container and expected it would contain more candy wedges than it did and that the contents would be greater than they were.

38.     Plaintiff was disappointed when he opened the box and saw the box was mostly empty, and the candy wedges did not even fill half the box.

39.     Plaintiff bought the Product at or exceeding the above-referenced price.

40.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

41.     Plaintiff would not have purchased the Product if he knew the box would be mostly empty or would have paid less for it.

42.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's use of an excessively large box.

43.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.

44.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar products raising identical issues ("Similar Products") because he is unsure whether those representations are truthful.

## Class Allegations

45.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Missouri Class:** All persons in the State of Missouri who purchased the Product during the statutes of

>limitations for each cause of action alleged; and
>
>**Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Mississippi, Oklahoma, Kansas, Nebraska, and Iowa who purchased the Product during the statutes of limitations for each cause of action alleged.

46. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48. Plaintiff is an adequate representative because his interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Missouri Merchandising Practices Act ("MMPA"),
Mo. Rev. Stat. § 407.010, *et seq.*</u>

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff purchased the Product for his own, personal use.

55. Plaintiff and all members of the proposed class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA

56. Defendant designed the box so consumers like Plaintiff would expect that it contained more candy wedges than it did.

57. The container misleads consumers because it is only 38% filled with candy wedges, having nearly 62% empty space.

58. Plaintiff relied on the size of the box to expect it would contain more candy wedges than it did.

59. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

60. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

61. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

62. The members of the Consumer Fraud Multi-State Class were misled similarly to Plaintiff with respect to their expectations the Product would contain more candy wedges than it did.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

63. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented.

64. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, distributed product descriptions, and targeted digital advertising.

65. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

66. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented.

67. Defendant's representations affirmed and promised that the Product contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented.

68. Defendant described the Product so Plaintiff believed it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

69. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

70. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its commitment to putting customers first.

71. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

72. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

73. Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, industry bodies, competitors, and consumers, to its main offices, and by consumers through online forums.

74. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

75. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented.

76. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

77. Defendant had a duty to truthfully represent the Product, which it breached.

78. This duty was non-delegable, based on Defendant's holding itself out as having special knowledge and experience in this area, as custodian of the Sour Jacks brand.

79. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency, and putting customers first, that it has been known for.

80. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

81. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

82. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

83. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained an amount of candy wedges that had a reasonable relationship to the packaging in which they were presented.

84. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

### Unjust Enrichment

85. Defendant obtained benefits and monies because the box contained significantly less candy wedges than expected by Plaintiff, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary damages, including statutory and/or punitive damages and interest pursuant to statutory and common law claims;

11

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ *Daniel F. Harvath*
Harvath Law Group, LLC
75 W Lockwood Ave Ste 1
Webster Groves MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com
